UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**   )<br>  )<br>**Plaintiff,**   )<br>  )<br>v.   )<br>  )<br>**JERMARIO TAYLOR,**   )<br>  )<br>  )<br>**Defendant.**   )<br>  ) | Case No. 07-20062 |

**OPINION**

On June 6, 2007, Defendant Jermario Taylor was indicted on one count of possession with the intent to distribute five grams or more of cocaine base ("crack") in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). On September 21, 2007, Defendant Taylor filed a Motion to Quash Arrest and Suppress Evidence (#14). The Government filed its Response (#15) on October 11, 2007. This court held an evidentiary hearing on the motion on October 31, 2007. Subsequent to the hearing, Taylor filed a Memorandum in Support of the Motion to Quash Arrest and Suppress Evidence (#21) on February 1, 2008. The Government filed its Response (#22) on February 29, 2008, and Taylor filed a Reply (#23) on March 21, 2008. For the reasons that follow, the Motion to Quash Arrest and Suppress Evidence is DENIED.

FACTS

At the evidentiary hearing held in this matter, the Government first called Special Agent

Jeffrey Martin of the Kankakee Area Metropolitan Enforcement Group (KAMEG). Martin provided the following testimony. On May 5, 2007, Martin was working with Special Agent Dustin Brown, also of KAMEG. Martin and Brown were assigned to patrol that evening. At approximately 7:30 p.m., Martin observed a white GMC Yukon sport utility vehicle with the driver not wearing a seatbelt. Martin testified he was driving a Dodge Durango at the time, and was facing southbound at a stoplight at the intersection of Court Street and Hobbee Street in Kankakee, Illinois. The Yukon turned onto Court Street and across the intersection of Hobbee and Court Street. It was daylight at the time, and the vehicle passed in front of Martin and Brown. Martin then initiated a traffic stop. As the Yukon pulled over, Martin and Brown observed the driver reach down in front of him. Martin was concerned because the driver could have been hiding a weapon. After the Yukon pulled over, Martin pulled behind. Brown exited the Durango and proceeded to the driver's door of the Yukon. Martin also exited the vehicle and stayed at the rear of the vehicle as the cover officer. Brown asked for identification and later asked the driver, whom Martin identified in court as Defendant Taylor, to exit the vehicle. Brown and Taylor then came to the rear of the vehicle. Brown asked Taylor if there were any weapons, drugs, or illegal items on Taylor's person or in his vehicle. Taylor indicated in the negative, then Brown asked for consent to search the vehicle. Taylor asked if he was required to consent, and Brown told him that he was not required but the Agents would be running a canine around the exterior of the vehicle. Taylor then indicated the Agents could search the vehicle.

  Martin went on to testify that Brown took Taylor across the sidewalk away from his vehicle while Martin ran his drug detection canine around the vehicle. The canine indicated to the presence of narcotic odor on the driver's door handle area. Martin then opened the vehicle door and directed

the canine inside. The canine again indicated at the driver's floor mat area. Martin removed the canine from the car, lifted the floor mat, and discovered a plastic bag containing crack cocaine. Martin then informed Brown of what had been found, and Brown placed Taylor under arrest. Martin transported Taylor to the Jerome Combs Detention Center, while Brown took the Yukon to the KAMEG office. While en route to the detention center, Martin advised Taylor of his Miranda rights. Taylor indicated he understood his rights and had nothing to say. Taylor later inquired where his vehicle was being taken, and Martin informed him that the vehicle was being seized for possible forfeiture. Taylor indicated the vehicle was not his. Taylor was later booked and searched as part of the booking process. During the search, Martin observed a plastic bag coming out of Taylor's right pant leg containing crack cocaine. Approximately $300 was also found in Taylor's pant pocket. Taylor was issued a traffic citation for failure to wear a seatbelt.

The Government also called Special Agent Dustin Brown of KAMEG at the evidentiary hearing. Brown corroborated Martin's testimony. Brown also testified that after Taylor provided him with identification, Brown informed Taylor he was stopped for not wearing his seat belt. Brown also indicated he patted Taylor down for officer safety while Martin walked the canine around Taylor's vehicle and did not locate any contraband or weapons. On cross examination, Brown indicated that he recognized Taylor as someone he was familiar with from working as a guard at the Kankakee County Jail, but further testified that had no bearing on his decision to stop Taylor on the night in question. Brown also indicated that the distance between the Durango and the Yukon at the time Brown and Martin initially saw Taylor without his seatbelt was "a couple hundred yards

maybe."[1] At the conclusion of Brown's testimony, the Government rested.

In the defense portion of the evidentiary hearing, Defendant Taylor took the stand and provided the following testimony. Taylor indicated the Yukon he was driving on the evening of May 5, 2007, was owned by Taylor's cousin. Taylor stated he was wearing his seatbelt at the time he was pulled over by the Agents and that Martin and Brown were on Court Street turning onto Hobbee Street rather than being on Hobbee street as the Agents testified. Taylor further stated that Brown had previously pulled him over since he started with KAMEG. Taylor indicated that he asked Brown why he had been pulled over, and Brown indicated it was because Taylor did not have his seatbelt on. Taylor told Brown he did have it on, but Brown said Taylor had put it on while Taylor was being stopped. Brown asked Taylor if he could search Taylor's vehicle, and Taylor asked if he had to let him search. Brown indicated he did not have to consent, and Taylor testified he then refused consent. Brown then told Taylor they would just have the canine search the car and asked Taylor to step out of the vehicle. Taylor testified he again indicated the Agents did not have consent to search, and Brown indicated it was the canine which was searching.

After walking away from the vehicle, Taylor gave Brown consent to search his person while Martin walked around the vehicle. Martin then came over and said that the canine indicated marijuana on the driver's side door handle. Martin then returned to the vehicle, put the canine inside the vehicle, and started tapping on the windows to get the canine to search the vehicle. The canine was inside the vehicle about three minutes. Martin put the canine in a second time, and when he was

---

[1] The Government filed a Motion to Reopen Hearing on the Motion to Suppress Evidence (#17) on November 8, 2007, to present additional evidence regarding the distance between the intersection where the Agents' vehicle was located and where Taylor's vehicle was located when Agents initially observed Taylor without his seatbelt. This court allowed the motion, and the distance was subsequently determined to be 318 feet.

finished Martin approached Brown and Taylor and told Brown to "cuff him up." Martin informed Taylor he was "being arrested for crack." Taylor was allowed to call his girlfriend after he was placed in the Agents' vehicle. Taylor was driven to the station by Brown while Martin continued to search Taylor's vehicle. Brown read Taylor his <u>Miranda</u> rights on the way to the police station. Taylor stated he was never issued a citation for failure to wear his seatbelt.

## ANALYSIS

In his Motion to Suppress, Taylor argues: (1) the Agents did not have probable cause to pull over Taylor's vehicle; (2) the Agents had no basis to conduct a search of the vehicle; and (3) the scope and duration of the traffic stop were impermissibly expanded.[2] Central to Taylor's arguments is his assertion that the testimony of the Agents at the evidentiary hearing lacked credibility for various reasons, including because: (1) Agent Brown testified that he could see Taylor without his seatbelt from a distance of 200 yards; and (2) Agent Brown did not reference his prior knowledge of Taylor in his police report or to his partner at the time of the arrest. Despite these arguments, this court, after observing the manner and demeanor of the Agents while testifying, found the testimony of Agents Brown and Miller to be very credible. The Agents' testimony was both straightforward and candid. This court finds that Brown was not testifying dishonestly when he stated he could see Defendant Taylor without his seatbelt from a distance of 200 yards. While the distance could have relevance to the issue of whether Agent Brown accurately observed Taylor from that distance without his seatbelt, the issue is of no consequence because both the Agents and Taylor himself testified that Taylor drove directly past the Agents. In fact, Taylor testified that he made eye contact

---

[2] While the Government initially contested Taylor's standing on the Motion to Suppress, the Government now concedes that Taylor has established standing to contest the stop and search of the Yukon.

with Brown as he passed.  In addition, the failure of Agents to include certain aspects of the stop in their respective police reports also does not sway this court's credibility finding.  See United States v. Eddy, 8 F.3d 577, 582 (7th Cir. 1993) (failure to include in written police report that officer admonished defendant he need not consent to search does not render incredible the officer's testimony that the admonishment was made).  Conversely, this court did not find credible the testimony of Taylor.  Taylor testified that he never gives consent for police officers to search his vehicle.  When asked whether that rule applied to consent to search his person, Taylor responded, "If I don't have to, no."  Taylor testified that he did give consent for the Agents to search his person on May 5, 2007, because, according to Taylor, "they was [sic] going to search me whether I said yes or no anyway."  The court finds it less than credible that Taylor would always refuse to consent to searches of his vehicle and to his person unless he "had to" but at the same time consent to the search of his person as he admits he did in the instant case.

Having determined that the testimony of the Agents was credible, the Agents had probable cause to stop Taylor's vehicle.  Driving without a seatbelt is a violation of Illinois law and provides probable cause for a stop where an officer observes a driver not wearing a seatbelt.  See United States v. Dowthard, 500 F.3d 567, 569 (7th Cir. 2007).  "In order to prove probable cause, the government need only show that it was 'reasonable' for [the officer] to conclude [the defendant] was not wearing a seatbelt."  Dowthard, 500 F.3d at 569.  As noted above, both Agents Brown and Martin and Taylor himself testified that Taylor drove directly past the Agents thus providing the Agents with an opportunity to observe Taylor without his seatbelt.  Taylor argues that the Agents do not routinely enforce traffic violations and their jobs as KAMEG agents are to "root out drug crimes and drug dealers."  However, the subjective motivations of the agents are irrelevant to the

issue of whether there was probable cause to stop the vehicle. See United States v. Moore, 375 F.3d 580, 584 n. 1 (7th Cir. 2004). Taylor also points to various exceptions to the Illinois' seatbelt law. However, whether Taylor ultimately had a defense to the traffic violation is irrelevant to the probable cause inquiry as long as the Agents reasonably believed a traffic offense occurred. See United States v. Cashman, 216 F.3d 582, 587 (7th Cir. 2000). As discussed above, this court found the Agents' testimony credible and both testified they observed Taylor was not wearing his seatbelt. Furthermore, Taylor has made no argument that any of the exceptions set forth in the seatbelt law apply to him.

Taylor next argues that, even if Agents had the authority to stop Taylor's vehicle, there was no basis to conduct a search of the vehicle. However, police officers are free to search a vehicle without a warrant assuming consent is given freely and voluntarily. See United States v. Johnson, 495 F.3d 536, 541 (7th Cir. 2007). In the instant case, Taylor has raised no issue regarding the voluntariness of the consent. Furthermore, this court has found credible the Agents' testimony that Taylor gave consent to search his vehicle and did not find credible Taylor's testimony that he did not give consent to search the vehicle.

Even had Taylor not given consent to search, the Agents had probable cause to perform a warrantless search of the vehicle after the canine positively indicated for the presence of narcotics. See United States v. Martin, 422 F.3d 597, 602 (7th Cir. 2005). Taylor has not challenged the evidence presented by the Government at the evidentiary hearing regarding the canine's training, and Taylor testified that the canine alerted when he was walked around the exterior of the vehicle before the canine was placed inside the vehicle. Taylor argues, however, that the Illinois statute governing stops for seatbelt violations prohibits any further search after the stop. However, it is

federal law that governs the admissibility of evidence in a federal prosecution even if the evidence would not have been admissible in state court. United States v. Singer, 943 F.2d 758, 761 (7th Cir. 1991). Accordingly, this argument is unavailing.

Finally, Taylor argues that the scope and duration of the traffic stop were impermissibly expanded. Taylor asserts that, assuming the traffic stop for the seatbelt violation was proper, the stop became unlawful because it was prolonged beyond the time required to complete the purpose of the stop. In the instant case, after Taylor was stopped, Brown asked Taylor for his identification and proof of insurance and asked Brown to step out of his vehicle. Brown then asked Taylor whether he had any weapons, drugs, or illegal items and for consent to search. Brown and Martin testified that Taylor then provided that consent. Thus, the issue is what occurred between the initial stop and the consent to search because "consent renders a search reasonable under the Fourth Amendment unless given involuntarily," which Taylor does not assert. United States v. Muriel, 418 F.3d 720, 725 (7th Cir. 2005). As part of a traffic stop, police officers may "detain the occupants of the vehicle long enough to accomplish the purpose of the stop," "ask the vehicle's occupants a 'moderate number of questions' and request their identification," and even "ask questions that do not concern the purpose of the stop and that are not supported by any other suspicion." Muriel, 418 F.3d at 726, quoting Berkemer v. McCarty, 468 U.S. 420, 439 (1984). There is nothing in the record to indicate that the time that elapsed between the time Taylor was stopped and the time Brown asked for consent to search was significant or that the stop was unreasonable prolonged. Therefore, this court concludes that Brown's actions did not constitute an unreasonable seizure. See United States v. Childs, 277 F.3d 947, 954 (7th Cir. 2002). Accordingly, this court finds no basis to quash Taylor's arrest or to suppress the evidence seized at the time of the arrest.

IT IS THEREFORE ORDERED:

    (1) Defendant's Motion to Quash Arrest and Suppress Evidence (#14) is DENIED.

    (2) This matter remains set for a status conference by personal appearance on May 2, 2008, at 11:00 a.m.

    ENTERED this 31st day of March, 2008

    **s/ Michael P. McCuskey**
    MICHAEL P. McCUSKEY
    CHIEF U.S. DISTRICT JUDGE